I'm the courtroom deputy for today. On the call is Judge Briscoe, who will be presiding, and Judge Ebell, and Judge Lucero. These arguments will be recorded by the court and will be posted to the Tenth Circuit's website later today. In addition, I want to remind everyone that these arguments are being broadcast via YouTube. Recording by counsel is prohibited. If arguing counsel or a judge drops from the call, I will announce it, and we will pause the proceedings and the clock. The dropped person will then attempt to reconnect to the conference. If counsel is unable to reconnect in a timely fashion, we may move on to the next argument. The case with the dropped counsel would then be moved to last on the docket. Counsel as I mentioned earlier, you are responsible for muting and unmuting your phone if necessary, so please be aware of any noises around you, and if you can, please mute your mics. Fifteen minutes per side is allocated for oral argument. The first time counsel speaks, they should introduce themselves to the court. The appellant's attorney may reserve a portion of their fifteen minutes for rebuttal by stopping their principal argument with time remaining on the clock and seeking leave of the court to reserve the remaining time. Time management is also counsel's responsibility. We recommend that counsel time themselves so that arguments can run smoothly. If more than one attorney plans to argue for the same side, please know that your arguments are not timed separately, and that it's the first arguing attorney's responsibility to stop speaking in order to allow the second attorney to speak. For both appellants and appellees, we will ring a bell that sounds like this. Once, when counsel has three minutes of time remaining, when counsel's total allotted time expires, we will ring the bell twice in quick succession like this. The bell will then be rung twice every minute that counsel is over their time. If the court announces a break at any time today, counsel for the next case should be prepared for the court to resume at any moment and be prepared to argue. Counsel, are there any questions? No. Judges, are you ready to proceed? We are. The United States Court of Appeals for the Tenth Circuit is now in session. Arguing counsel in 19-1151, Compañía de Inversiones versus Grupo Cementos de Chihuahua, are on the call. Mr. Cooper, can you hear me? Yes, I can hear you. Mr. Lauer, can you hear me? Yes, I can. Judge Brisco, did you hear both counsel and can you hear me? Yes, I can. Judge Ebell, did you hear both counsel and can you hear me? Yes, I can. Thank you. And Judge Lucero, did you hear both counsel and can you hear me? Yes, I can. Thank you, Judge. Judges, the call is configured and counsel are prepared to argue. Judge Brisco, you may call the first case when you're ready. We are ready to proceed in case number 19-1151, Companion v. Grupo. We're ready to hear from you, Mr. Cooper. Thank you, Your Honor. May it please the court, David Cooper on behalf of Grupo Cementos de Chihuahua and GCC Latino America, which I'll refer to together as GCC. And I'd like to reserve three minutes for rebuttal. Fine. This case concerns an arbitration in Bolivia between GCC, two Mexican companies, and SIMSA, a Bolivian company, concerning the sale of shares of a Bolivian cement company. The arbitration panel found liability and damages, but certified appeals to the Bolivian courts. A Bolivian court annulled the merits portion of the award and the damages portion is still under review in the Bolivian courts. SIMSA argues that the highest constitutional court in Bolivia didn't mean what it said by holding that the annulment ruling, quote, remains in effect, and that a Bolivian arbitration award can be enforced in the United States even when it's not binding in Bolivia. These arguments are wrong as a matter of law and would improperly insert the U.S. courts into ongoing Bolivian judicial proceedings. But this court does not have to reach these issues because the lack of personal jurisdiction over GCC means that this case should be dismissed on jurisdictional grounds in the first place. For personal jurisdiction, the only issue on appeal is specific jurisdiction. And the test under Bristol-Myers is that the specific claim at issue must arise from the forum contacts. Here, the only claim is for enforcement of the arbitral award. Neither the parties nor the district court has suggested that GCC's U.S. contacts are relevant to the merits of SIMSA's claim. That should be the end of the matter because, quote, relevant to the merits is the exact test SIMSA advocates on page 25 of its brief, quoting this court's employer's mutual case. Essentially, SIMSA asks for a special exception to Bristol-Myers for a claim to enforce an arbitration where you'd look at the claim in the arbitration itself rather than the claim being brought in the U.S. court. But there are no special exceptions here. There is one rule dictated by due process, which is that the connection must be to the claim and there's no such connection here. Let me, this is Judge Briscoe, let me ask about that point. Can we look into the prior negotiations that occurred in America? That is, all of the meetings that were conducted between the parties and also, ultimately, even agreements that were reached in America. So, this court can look at negotiations and agreements. I'd note that there were no agreements formed in America. All of the agreements were formed abroad between the two, the Mexican and Bolivian entities. So, there's no suggestion that the actual agreements were U.S. agreements and, of course, they also choose Bolivian law and Bolivian arbitral proceedings to enforce disputes about the agreements. But as far as the negotiations are concerned, the question is, did the negotiations in the United States actually give rise to the claim? And here, the claim is for enforcement of an arbitration award and there is no dispute at all that a claim for enforcement of an arbitral award has nothing to do with the underlying negotiation. Excuse me, counsel, but again, you would not have the arbitration award unless there was a breach of the agreement. That is true. Isn't it fair to go back to how this started? So, no, and the reason is because still, the test is whether it's, quote, relevant to the merits of the claim.  and the merits of that claim do not depend on the negotiations. But even if you disagreed and were to look at the underlying claim, that is the claim for breach of contract that the arbitral panel decided, the communications in the United States also were not the subject of that award. That is, they were at most background facts. The vast majority of the negotiations and all of the communications relevant to the claim for breach of contract occurred abroad, none in the United States. And it's telling that SIMSA does not even attempt to argue that the communications in the United States were a but for a cause of the claim. And the reason is because the claim for breach of contract had to do with a right of first refusal. And the right of first refusal did not actually go into effect until the offer was made by the third party company, the third company, that was CCS. And when CCS made that offer, the question is, did GCC then mislead SIMSA into believing that it would accept a different offer from the one that CCS made? Let me interrupt. If either of my colleagues have questions, if you would go ahead and proceed announcing your name first. Well, this is Judge Ebell. I just wanted to confirm that you say the damages award is still being debated in the courts in Bolivia, but the merits award is not. That's final. Is that correct? Yes, the merits, the appeals from the merits award have been disposed of. And the only question there is whether or not, as how they've been disposed of. And our position is when the Bolivian High Court said that the decision setting aside the merits award remains in effect, that means that it does remain in effect and that therefore the merits award is annulled. But there are no further proceedings on the merits award itself. So I should note that one of the questions still in play in terms of the proceedings on the damages award is the meaning of the merits award. So one of the reasons that GCC argues that the damages award should be set aside is that it's effectively mooted because the merits award should be set aside. And the Bolivian courts will be deciding that issue. It's still pending for them. Thank you. So getting back to jurisdiction just for a moment. Counsel, this is Judge Lucero. Yes. You stated the introduction to your argument that after the arbitration award was entered, the arbitration was quote certified, those are your words, end quote, to the Bolivian courts. Where do we find that certification in the record and to the best of your ability, could you tell us what the wording of that is just so that we can determine if that is a conditional arbitration award? So I'm sorry, I'll look up the records in just a moment. But yes, what happened was GCC asked for the arbitral panel's permission to have the appeals brought in the Bolivian courts. And twice for the merits award and for the damages award, the arbitral panel agreed that the appeals could be brought in the Bolivian courts. And I'm sorry, I'll pull up the site in just a moment. But you used the word certification and I wanna pursue what that means in terms of the finality of the award. So I'm not sure exactly what word they used. I mean, obviously because it's a foreign judicial proceeding the specific language might be different than we would use. Basically the way it works in Bolivia is that under article 63 of their arbitration law. I think it would be more helpful just to answer the question specifically. The Amparo court in Bolivia presently has jurisdiction, is that correct? No, that's not exactly correct because basically the first there's a nullification proceeding in the Bolivian courts, then an Amparo would be essentially an appeal from the lowest courts in Bolivia's decision. That way the Amparo goes to the guarantee court. Right now where things stand in Bolivia is that on the damages award, there was a remand back to the 12th judge. So the 12th judge, essentially the sort of a trial court level in Bolivia is deciding the issue once the 12th judge decides that there then could be an Amparo to the guarantee court. Thank you. Go ahead and proceed please. Thank you, your honor. Moving back to jurisdiction. Again, the question here is not were there contacts in the United States? The question is were those contacts in the United States relevant to the actual merits of the claim? Were they a but for cause of the claim? And here there's no question that the claim would exist but for the U.S. contacts. And the arbitral award lays out all of the specific contacts themselves and the ones that they relied upon for their decision. And none of those were the U.S. contacts that SIMSA puts forward in this court here. This is Judge Ebel. Judge Ebel, they tried to get an enforcement in Mexico and Mexico said they couldn't serve the award on the defendant. Where do you think this case can be, where this award could be entered as a judicial judgment? So they could, there is an injunction in Mexico which they're currently challenging. So the action could be brought in Mexico. The Mexican courts would determine whether or not that was- Let's assume that that was tried with enough good faith that they don't have to continue that. Then where, are you arguing there's only one place in the world where it could be brought or do you concede there are a variety of places that could be- So it certainly could be brought in Bolivia. I don't think there's any dispute about that. Outside of Bolivia, the question would be first with their jurisdictions. So there might be other countries where GCC has a presence, for example, based on quasi-MREM jurisdiction or general jurisdiction where they could bring a claim against GCC. Then the second question would be, is the award final and binding? Obviously our position is that it can't be brought anywhere at the moment, but if in fact the award were confirmed by Bolivian courts, then certainly they could bring an action in Bolivia and potentially other places where jurisdictions- Well, just excuse me, this is Judge Briscoe again. You say that we cannot have the pursuit of this award of arbitration here because it is not a final judgment. And doesn't the New York convention provide that these types of proceedings can commence and in fact become final, even though there is underlying question as to the merits of both the claim and the amount of the award? The New York convention says that the award must be quote, binding. And so the question is, does that mean binding under the law of the United States or binding under the law of Bolivia, the country where the arbitration took place? And the New York convention doesn't say, it just says the word binding. And the critical point here is that the executive branch has looked at this at the time that the treaty was ratified and told the Senate binding means binding under the law of where the arbitration took place. And here that is Bolivia and it's undisputed that under Bolivian law, this award is not binding. There's no dispute about that at all. This court does not engage in any complex decision on Bolivian law to decide that. And so the question is only what deference does that get and under established law, there's very strong deference to the executive, especially in an area like this where international comedy and cooperation are so important. And there's absolutely nothing in the treaty that suggests something different from what the executive decided, which is that binding should be under the law of the place where the arbitration took place. And there's a very strong prudential reason for that as well to avoid the kind of form shopping where you're choosing a different country's form because they have different laws regarding whether the award is binding. Council Judge Lucero, is the word binding as you use it, the same as final in the context of American arbitration, that is to say a final decision by the arbitration panel enforceable as such? I agree that it means, no, I apologize. And I'm considering, as you know, I'm pursuing the collateral review issue as well. And I still don't have an answer as to whether that is approved by the arbitration panel or just an independent offensive action on your client's part to try to block the finality or binding nature of the arbitration. So as far as whether it means the same thing as final, I think it depends on what we mean by final, but enforceable, I think is the correct word because enforceable, the question is, can you enforce it in Bolivia? That is, could they actually bring a claim? We want our money, give it to us now in Bolivia. And it's undisputed that they cannot. So that's really the ultimate question. Can they enforce it in the United States, even though they can't enforce it in Bolivia? And it's very clear the executive branch position is no, there's nothing in the treaty to the contrary. And so we would strongly urge this court not to engage in an interpretation of the treaty different from what the executive decided and different from anything that the treaty states. I see that I'm almost out of time. I'll reserve my remainder of my time for rebuttal unless the panel has any more questions at this time. Thank you. Thank you. We're ready to hear from the Apolli. Yes, Elliot Lauer for Apolli Compañía in Versiones Mercantiles S.A., referred to as SIMSA. Good morning, may it please the court, let me first answer two of the questions that were raised with respect to certification. The only certification by the panel is that Appendix A-122 where in connection with the final corrected damages decision, the panel specifically certifies with respect to its final partial arbitral award on damages for purposes of the New York Convention that it was issued in the place of Bolivia. GCC effectively concedes as they do at page 27 of their reply brief that in the context prior to their filing the challenge in Bolivia, this was a final award for all purposes. They say, quote, that they do not claim that SIMSA had to go to the Bolivian court to confirm. They effectively acknowledge that had they not made the challenge, even they would agree that this was final and binding for all purposes. Second, I must take issue with my colleague when he repeatedly says that it's undisputed under Bolivian law. The fact is that the district court observed GCC never proved what is current Bolivian law. And as the court said, I am left in the dark as to whether Ms. Andaluza's characterization, that's their expert, of these provisions is accurate and whether they also appear in the new arbitration law. But whether as a result of this challenge, there is enforceability in Bolivia or not has nothing to do with their inability to prove the exception under New York Convention Article 5E. There are two exceptions that they had the burden to try to prove. One, the award has not yet become binding on the parties and notice the change in the next phrase, or has been set aside or suspended by a competent authority of the country in which or under the law of which that award was made. The distinction is that whether something is binding is every case, every case that we cite, both we and they cite several dozen cases, every case essentially follows federated, that it is final and binding if it is final within the context of the arbitration. And therefore, whether it is binding is not dependent on local law, but in keeping with prior practice, only the courts of the forum or the seat can set aside. And that is the distinction. Here, defendants are unable to cite a single case and we have found no case in which A, an award was made final within the arbitral context, which this is, the award was not binding or enforceable under the laws of the forum, which they say is the case in Bolivia. And C, a US court has ruled that the award was therefore not binding for purposes of Article 5 in the convention. There is no case. If you look at the dozens of cases that the two parties cite there are a number where, despite a challenge or despite lack of enforceability in the local forum, so long as it was final for the arbitral context, it is binding and enforceable within the New York Convention. Let me turn also to related- Counsel, this is Judge Lucero, if I may. Of course. In August of 2016, the, or thereabouts, the president of the Amparo Court wrote a decree in a clarification order in his role as judge stating that the Ninth Circuit, for the ninth judges, a ninth judge annulment remained effective. Is that the last action by the Amparo Court and what is the status? That's a compound question, but what is the status of the proceedings before the ninth judge? You'd answer it in that order, please. Thank you. With respect to the Merits Award, the proceedings on the Merits Award are concluded. The action by the president- So is the answer to my question then that the president of the Amparo's Court last decree that I referred to, the final thing that appears of record on that matter from the Amparo Court? I don't think that is an official part of the Amparo Court, but to the extent that we can rely, and I'm not saying we can rely, on the dating and filing of documents in Bolivia, the president's decree, which was a personal, non-formal document, not in a juridical context, appears to have been filed on the last day that he left office. As our expert explained, and the district court agreed, that was a completely private, ultra vires act, notwithstanding, even if it hadn't been surrounded by the unusual timing of it being dated a year before it was filed. But with respect to that Merits Award- Counsel, this is very complicated for me, but on November the 21st, the full court acted on the Amparo against the ninth judge, and as I understand it, revoked the stay against the ninth judge's ruling, thereby appearing to reinstate the decision granting the annulment request. So help me out of this, but isn't that essentially a stay of the arbitration award? No, your honor. Let me explain this. Dr. Aspen explained, and that's why it took a day in the hearing for the district court. There were two separate Amparos. Think of them as two separate silos. One has nothing to do with the other. Prior to the Amparo that was brought by SIMSA, challenging the ninth judge's ability to rule in the matter while the bias claim was ongoing, the constitutional court with respect to the GCC Amparo revoked the decree that had brought the ninth judge's decision into existence. And as Professor Aspen explained, as a result of that revocation order, the ninth judge's decision was nullified. It reinstated the eighth judge's decision, which had rejected the challenge to the award and the merits award became final. Later, in what we refer to as the SIMSA Amparo, and the clarification order, again, limited to the SIMSA Amparo, is simply addressing the fact that that failure to challenge the ninth decision was ineffective, but as Dr. Aspen explained, that was irrelevant because the ninth judge's decision had already been revoked by the constitutional court. Put it another way, GCC's position would lead to absurd results. It would run the constitutional review meaningless if regardless of the fact that the constitutional court revoked the remand order, the ninth decision would still stand. And as the district court held, the GCC's expert was never able to explain how a post-remand decision can have any legal effect after the constitutional court revokes the remand order. So for all intents and purposes, the merits award is not set aside. They have failed to meet their burden under the convention that it has been set aside and it is a final, binding, arbitral award. So- This is Judge Briscoe again. This is Judge Briscoe again. So the final ruling that we have to look at then is the ruling of the eighth judge. You don't have to look at the eighth judge. I mean, that's icing on the cake. Well, I mean, his ruling has been reactivated, as you put it. Correct. It's her ruling. Okay. In our words, it would be res judicata, but the challenge was revoked. Counsel, this is Judge Ebel. You're arguing about the merits ruling, but apparently there's some significant debate or concern whether the damages award is final. Do you think it is or is not final? And if it is not final, but the merits award is, how could a Colorado court, or federal court in the United States, enter any enforceability ruling as long as even the damage award is, as long as the damage award is not final? There is no dispute that prior to the challenge filed by GCC in Bolivia, the damages award was a final damages award. So the question before the court- What is disputing then? What the appellant is disputing is, they claim as a result of making the challenge in Bolivia, the award no longer was binding for purposes of the convention. They do not dispute that prior to the challenge, and this is on page 27 of their reply brief, they acknowledge that prior to making that challenge, or had they never made that challenge, they have to concede this was a final award because there was no further recourse within the arbitral context. We have shown that a proper reading of the convention in almost all the courts that have addressed this, starting with Fertilizer, have made it clear that the fact that recourse may be had to a court of law does not prevent the award from being binding if no further recourse to another arbitral tribunal. And that's what we have here. So Counselor, I understand this argument. I understand that that was, I understood that was what was being argued in the brief. Your proposition is finality for the purposes of the New York Convention and jurisdiction here is predicated only on whether there are further arbitration proceedings available. And it does not become unfinal because of other judicial challenges in the host country that could occur. Exactly. That is precisely the point. And that is the law in almost every one of the cases cited and every one that actually addresses it. Just give me the page numbers on your brief that focus on that, would you again, please? Or... Okay. Starting at page 44, the damages award is binding under the New York Convention. And that runs to 54. Thank you. That's enough, thank you for me. Thank you. Counsel Judge, Judge Lucero, are there any ongoing proceedings in the Bolivian courts? Yes, there are. There is this multifaceted challenge to the damages award, which has now been pending for several years. And in accordance with article six of the convention, GCC applied below for the court to state proceedings in deference to that. And the district court in the exercise of discretion, of its discretion, in large part, because the litigation seemed to be ongoing with no end in sight, denied the application for a stay. And that denial has not been preserved or raised on appeal. May I ask- What is the status of the Bolivian proceedings at this time? I think they're sort of in limbo. At the last that we were engaged, which goes back more than a year at the argument for the district court, we were advised that there was a situation in which the so-called 12th judge who had the case remanded to the 12th judge was waiting for some advice, either from the International Arbitral Tribunal. I confess it's a bit obscure, but I think because of the obscurity and probably the reluctance of GCC to post a security, the district court denied the stay in the face of that application. The challenges have been ongoing. Mr. Lauer, this is Judge Ebell. What do we do if we end up with a final ruling from the highest courts in Bolivia that this award is unenforceable? And let's just make it, the reasons that would make it unenforceable in the United States, either that it exceeded the arbitrator's power or that there was some planning of fraud by the arbitrator, those are the two most clearly, and those aren't being argued here. I understand that, but maybe that complicates the case. Let's just say we have a final Bolivian order saying that the arbitrator's award was wrong and should be reversed. Now, somebody then tries to enforce that order in the United States courts, and then we have the current effort to enforce the arbitrator's award in the United States courts. Do we have two inconsistent awards, both of which have an equal right to be enforced in the United States? How do we then resolve which one to go forward with? No, I think, I mean, not to be jocular, but I think we're asking a hypothetical. I think first, I think the appropriate thing for this court is to affirm the judgment below. Should that hypothetical occur, regardless of the reason, should a Bolivian court somehow set aside the arbitral award, I think based on the proceedings in Bolivia at that time, this court, or in the first instance, the district court, would be called upon to address whether that decision carries weight or whether this decision by the 10th Circuit affirming the confirmation judgment has res judicata effect. This is Judge Briscoe. Before we run totally out of time, I must ask about service, service of process, and what provision you are relying on in order to obtain service. Yes, under 4F3, the district court had discretion to use alternative service. Here, when the Mexican authorities basically refused to serve GCC, which has an enormous physical headquarters in Chihuahua, the district court decided that it could properly exercise discretion, order alternative service on Cleary Gottlieb, GCC's counsel that was already appearing in the case in the face of our diligent efforts to serve. And as the Supreme Court held in Volkswagen work, and numerous cases have followed this, this had nothing to do with the Hague Convention because service did not involve a transmittal of documents abroad. Service- So you're saying the Hague Convention does not apply in this case? I'm saying that, and the Supreme Court has said that. And is your opposing counsel also saying that the Hague does not apply here? I think my opposing counsel tends to disagree almost. Okay, okay, that's what I thought. That's what I thought. So we can just drive by.